ACCEPTED
15-25-00003-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
3/10/2025 3:31 PM
CHRISTOPHER A. PRINE
CLERK

**No. 15-25-00003-CV**

IN THE FIFTEENTH COURT OF APPEALS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
3/10/2025 3:31:33 PM
CHRISTOPHER A. PRINE
Clerk

**LONE STAR NGL PRODUCT SERVICES, LLC**
(*in its own capacity and as assignee*),
*Plaintiff/Joint Petitioner,*

**v.**

**EAGLECLAW MIDSTREAM VENTURES LLC
AND CR PERMIAN PROCESSING, LLC,**
*Defendants/Joint Petitioners.*

Appeal from the Texas Business Court, 11th Division
Trial Court No. 24-BC11A-0004

## BRIEF OF DEFENDANTS/JOINT PETITIONERS

**BECK REDDEN LLP**

Fields Alexander
falexander@beckredden.com
Thomas E. Ganucheau
tganucheau@beckredden.com
Mary Kate Raffetto
mkraffetto@beckredden.com
Parth S. Gejji
pgejji@beckredden.com
Garrett S. Brawley
gbrawley@beckredden.com
Cassie Maneen
cmaneen@beckredden.com
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700

**ATTORNEYS FOR DEFENDANTS/ JOINT PETITIONERS**

*Oral Argument Requested*

**IDENTITY OF PARTIES AND COUNSEL**

Plaintiff/Joint Petitioner:        Lone Star NGL Product Services LLC,
which is now known as
Energy Transfer GC NGL Product Services LLC,[1]
in its own capacity and as assignee of
Energy Transfer GC NGL Marketing LLC,
Energy Transfer GC NGL Fractionators LLC,
Energy Transfer GC NGL Pipelines LP,
Energy Transfer Mont Belvieu NGL Pipelines LLC,
Energy Transfer Mont Belvieu NGLs LP, and
Energy Transfer GC NGLs LLC

Counsel for Plaintiff/
Joint Petitioner:        Andrew Price
Rafe A. Schaefer
Abraham Chang
Timothy Shinn
NORTON ROSE FULBRIGHT US LLP
1550 Lamar St. Suite 2000
Houston, Texas 77010-3095
(713) 651-5151

William J. Boyce
ALEXANDER DUBOSE & JEFFERSON
1844 Harvard St.
Houston, Texas 77008
Phone: (713) 523-2358

---

[1] Although Lone Star is now known as Energy Transfer GC NGL Product Services LLC, it is referred to as "Lone Star" throughout this brief.

i

| | |
|---|---|
| Defendants/<br>Joint Petitioners: | EagleClaw Midstream Ventures LLC and<br>CR Permian Processing, LLC |
| Counsel for Defendants/<br>Joint Petitioners: | Fields Alexander<br>Thomas E. Ganucheau<br>Mary Kate Raffetto<br>Parth S. Gejji<br>Garrett S. Brawley<br>Cassie Maneen<br>BECK REDDEN LLP<br>1221 McKinney, Suite 4500<br>Houston, Texas 77010-2010<br>Phone: (713) 951-3700 |
| Trial Court: | Hon. Sofia Adrogué<br>Texas Business Court, 11th Division<br>301 Fannin Street<br>Houston, Texas 77002<br>Phone: (713) 274-1067 |

## TABLE OF CONTENTS

**Page**

Identity of Parties and Counsel ................................................................. i

Table of Contents ................................................................................ iii

Index of Authorities ............................................................................ iv

Statement of the Case .......................................................................... vi

Statement Regarding Oral Argument .................................................... vii

Issues Presented ............................................................................... viii

Statement of Facts ...............................................................................1

Summary of Argument ..........................................................................7

Argument .............................................................................................9

    I.     The Business Court Has Jurisdiction Under the Parties' Subsequent Agreement. ...........................................................9

    II.    Section 8 of House Bill 19 Regarding Changes in Law is Not Jurisdictional. ...............................................................11

    III.   All the Other Statutory Requirements for Removal Were Satisfied. ...................................................................17

    IV.  Requiring these Parties to Dismiss and Refile the Case in Business Court Will Create Inefficiencies and Prolong Litigation. ....................................................................19

Conclusion and Prayer ..........................................................................20

Certificate of Service ...........................................................................22

Certificate of Compliance ....................................................................22

Appendix

    Opinion and Order (CR110-27) ...............................................Tab A

    Subsequent Agreement (CR40-46) ..........................................Tab B

CASES                                                                                    PAGE(S)

*In re AIU Ins. Co.*,
   148 S.W.3d 109 (Tex. 2004) (orig. proceeding) ................................................16

*Cypress Towne Ctr., Ltd. v. Kimco Realty Servs., Inc.*,
   No. 24-BC11A-0013, 2025 Tex. Bus. 8 (Business Court, 11th Div.
   Feb. 25, 2025) ................................................................................................17

*Dubai Petroleum Co. v. Kazi*,
   12 S.W.3d 71 (Tex. 2000) ...............................................................................15

*In re ETC Field Services, LLC*,
   No. 15-24-00131-CV, 2025 WL 582320 (Tex. App.—15th Dist.
   Feb. 21, 2025, orig. proceeding) ............................................................8, 11, 19

*Guardianship of Fairley*,
   650 S.W.3d 372 (Tex. 2022) ............................................................................12

*Hirad v. State*,
   14 S.W.3d 351 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)..................14

*Lapiner v. Maimon*,
   429 S.W.3d 816 (Tex. App.—Houston [14th Dist.] 2014,
   pet. denied)................................................................................................12, 17

*Powell v. State*,
   897 S.W.2d 307 (Tex. Crim. App. 1994) ..........................................................14

*In re Prudential Ins. Co. of Am.*,
   148 S.W.3d 124 (Tex. 2004) (orig. proceeding) ...............................................16

*Prudential Sec. Inc. v. Marshall*,
   909 S.W.2d 896 (Tex. 1995) (orig. proceeding) ...............................................16

*Prystash v. State*,
   3 S.W.3d 522 (Tex. Crim. App. 1999) ..............................................................14

*Reed Elsevier, Inc. v. Muchnick*,
   559 U.S. 154 .....................................................................................................12

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*,
  852 S.W.2d 440 (Tex. 1993) ..................................................................15

*Tex. Propane Gas Ass'n v. City of Houston*,
  622 S.W.3d 791 (Tex. 2021) ..................................................................15

*TGS-NOPEC Geophysical Co. v. Combs*,
  340 S.W.3d 432 (Tex. 2011) ..................................................................13

STATUTES

TEX. GOV'T CODE
  §§ 25A.001-020 ........................................................................................2
  § 25A.003(m) ..........................................................................................18
  § 25A.004 ................................................................................................13
  § 25A.004(b)-(f) ......................................................................................13
  § 25A.004(d)(1) .......................................................................................10
  § 25A.004(d)(1)-(2) ..............................................................................2, 19
  § 25A.004(d)(2) ......................................................................7, 9, 10, 16, 17
  § 25A.004(g)–(h) .....................................................................................18

RULES

TEX. R. CIV. P. 355(a) .................................................................................18

TEX. R. CIV. P. 355(b) .................................................................................18

TEX. R. CIV. P. 355(b)(2)(B) .......................................................................18

OTHER AUTHORITIES

Act of May 25, 2023, 88th Leg., R.S., ch. 380 (H.B. 19).......................11

Act of May 25, 2023, 88th Leg., R.S., ch. 380 (H.B. 19).......................13

## STATEMENT OF THE CASE

*Nature of the Case*
This is a multi-million-dollar business case related to the sale of natural gas liquids. The case was originally filed in May 2021 and was assigned to the 61st Judicial District Court in Harris County, Texas.

With the passage of House Bill 19 and the creation of the new Business Court, the parties entered into an agreement designed to permit removal to Business Court. CR40-46. The parties filed a Joint Notice of Removal on September 17, 2024. CR17-23.

*Trial Court*
Texas Business Court, 11th Division
(Hon. Sofia Adrogué)

*Parties on Appeal*
Plaintiff/Joint Petitioner:

Lone Star NGL Product Services LLC,
which is now known as Energy Transfer GC NGL Product
Services LLC, in its own capacity and as assignee of
Energy Transfer GC NGL Marketing LLC,
Energy Transfer GC NGL Fractionators LLC,
Energy Transfer GC NGL Pipelines LP,
Energy Transfer Mont Belvieu NGL Pipelines LLC,
Energy Transfer Mont Belvieu NGLs LP, and
Energy Transfer GC NGLs LLC

Defendants/Joint Petitioners:

EagleClaw Midstream Ventures LLC and
CR Permian Processing, LLC

*Proceedings Below*
Upon removal, the Business Court ordered the parties to submit briefing on the propriety of removal and jurisdiction.

After conducting a hearing on November 12, 2024, the Business Court remanded the case to the 61st Judicial District Court. CR110-11. [**Tab A**] The court also stayed its order and granted the parties' joint request for a permissive appeal. CR111.

**STATEMENT REGARDING ORAL ARGUMENT**

This permissive appeal presents a narrow jurisdictional issue but an important question for the Court's consideration and the jurisprudence of the State: whether consent to removal waives the non-jurisdictional provision regarding changes in law found in Section 8 of House Bill 19. Although the record is short and the parties are aligned, Defendants/Joint Petitioners believe that the careful attention afforded by oral argument is warranted.

**ISSUES PRESENTED**

This case presents the following issue, which this Court identified as meeting the standards for permissive appeal under Tex. Civ. Prac. & Rem. Code § 51.014(d):

> Whether a civil action that was commenced before September 1, 2024, may be removed to Business Court where the parties entered into a subsequent agreement expressly consenting to the jurisdiction of the Business Court.

CR126.

*Lone Star Sues EagleClaw and CR Permian Regarding Natural Gas Contracts*

This is a case about the sale of natural gas liquids. Plaintiff/Joint Petitioner Lone Star NGL Product Services LLC ("Lone Star") filed this lawsuit on May 20, 2021 in Harris County. CR4, 111. The case began in the 61st Judicial District Court of Harris County, Texas as cause number 2021-30388. CR40, 111. Lone Star alleges that Defendants/Joint Petitioners EagleClaw Midstream Ventures LLC ("EagleClaw") and CR Permian Processing, LLC ("CR Permian") breached two natural gas purchase agreements that involve an obligation to sell Y-Grade[2] to Lone Star. Defendants dispute these allegations and maintain that even if the contracts had been breached—and they have not been—Lone Star has suffered no damages.

The parties have spent the last few years engaged in various discovery efforts and motions practice. This includes multiple rounds of written discovery, the review and production of hundreds of thousands of pages of documents, and several depositions. It also includes several third-party ancillary discovery proceedings commenced in various jurisdictions. CR48, 57, 65-66. Additionally, since the case was filed in 2021, the parties have entered into a number of discovery agreements and litigated several discovery disputes, resulting in a number of discovery orders. *See* CR4-16.

---

[2] Y-grade is a term used to describe the natural gas liquids that result from processing natural gas.

***The Parties Jointly Remove the Case to Business Court***

During the pendency of this lawsuit, on June 9, 2023, the Texas Legislature passed House Bill 19. The bill, which created the Business Court, was codified at Chapter 25A of the Texas Government Code. *See* TEX. GOV'T CODE §§ 25A.001-020. Section 25A.004 of the statute, entitled "Jurisdiction and Powers," sets out the jurisdiction of the Business Court. *Id.* § 25A.004. Of note here, section 25A.004(d)(1) and (2) provide in relevant part:

> (d) The business court has civil jurisdiction concurrent with district courts in the following actions in which the amount in controversy exceeds $10 million, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs:
>
> > (1) an action arising out of a qualified transaction;
> >
> > (2) an action that arises out of a contract or commercial transaction in which the parties to the contract or transaction *agreed in the contract or a subsequent agreement that the business court has jurisdiction of the action* . . . .

*Id.* § 25A.004(d)(1)-(2) (emphasis added).

After the bill was passed, the parties jointly determined that proceeding in Business Court would be beneficial for this case, given the complex nature of the agreements at issue and the Business Court's expertise. CR40-46. As a result, on September 13, 2024, the parties entered into a "subsequent agreement" as contemplated by the statute. CR40-46 (the "Subsequent Agreement") [**Tab B**].

2

The Subsequent Agreement has several key provisions. The parties consented to jurisdiction in the Business Court:

> The Parties agree that the Current Lawsuit, including all claims and causes of action asserted as of the Effective Date of this Agreement, is within the jurisdiction of the Texas Business Court, as established by Chapter 25A of the Texas Government Code. The Parties also agree that they are subject to personal jurisdiction in the Texas Business Court.

CR41.

That is not the only provision in the Subsequent Agreement designed to make clear that the parties believe the Business Court has jurisdiction over the suit. The parties spelled out their intent to proceed in Business Court and included multiple, additional provisions designed to defeat any jurisdictional hurdle. CR41. This included a provision directly quoting from the statute:

> The Parties acknowledge that this Agreement is meant to satisfy the requirements of Section 25A.004 of the Texas Government Code as a "subsequent agreement that the business court has jurisdiction over the action."

CR41. It also included a provision waiving any jurisdictional challenges:

> The Parties waive any challenge to the jurisdiction of the Texas Business Court to hear and adjudicate the claims and causes of action asserted in the Current Lawsuit that are to be asserted in the Business Court Lawsuit.

CR41. Multiple portions of the Subsequent Agreement even expressly explain that the intent of the agreement was to effectuate removal to the Business Court without necessitating concerns over jurisdiction:

3

The Parties intend that this Agreement—executed after September 1, 2024—is to allow the Current Lawsuit to become removable to the Texas Business Court.

. . . .

"Primary Intent": The Parties intend this Agreement to be interpreted to afford the broadest possible reservation of the Parties' rights to assert any claims, causes of action, and/or defenses in the Business Court that were or could have been asserted in the Current Lawsuit as of the Effective Date.[3]

"Secondary Intent": The Parties also intend for this Agreement to be interpreted consistent with ensuring the Business Court has jurisdiction over the Current Lawsuit.

CR41, 46.

The parties also went to great lengths in the Subsequent Agreement to preserve the status quo of this litigation. CR43. This included several provisions intended to maintain deference to orders from the 61st Judicial District Court, keep current discovery agreements and orders in place, and maintain the case's schedule. CR42-45. The Subsequent Agreement also acknowledges the pending ancillary discovery actions and sets forth strategies to ensure those actions are conducted efficiently. CR44-45.

---

[3] "Effective Date" in the Subsequent Agreement is *not* the effective date of the statute, but instead a defined term meaning the date the Subsequent Agreement was signed by both parties. CR41. That date was September 13, 2024. CR46.

Finally, the Subsequent Agreement outlines a procedure in the event the Business Court remands the matter back to the 61st Judicial District Court in Harris County. CR42, 45. If that occurs, Lone Star is required to nonsuit all of its claims and dismiss the current action within five business days, and then turn around and refile the case in the Business Court. CR42. A 45-day tolling provision would apply in the interim. CR42, 45.

Each of these provisions was intended by the parties to effectuate a clean, efficient removal of the case to the Business Court and to protect the parties' interests if the case was ultimately remanded. *See* CR46.

### *The Parties Jointly Remove the Case and the Business Court Issues a Remand Order Which it Certifies for a Permissive Appeal*

The parties filed the Subsequent Agreement with the 61st Judicial District Court and the Eleventh Division of the Business Court on September 17, 2024. The parties filed a Joint Notice of Removal that same day. CR17-22.

The Business Court then ordered the parties to submit briefing regarding the propriety of removal and jurisdiction. CR23-24. The parties submitted their Joint Brief in Support of Removal to Business Court on October 16, 2024. CR25-38. On invitation of the Business Court, Lone Star submitted its Additional Brief in Support of Removal to Business Court on November 4, 2024. CR97-108. The Business Court conducted a hearing on the issue on November 12, 2024. RR1-79.

5

As counsel argued to the Business Court, the inquiry in this case is a narrow one because the case involves consent between the parties. RR17 ("Consent cases are fundamentally different than non-consent cases.").

But the Business Court disagreed. On December 20, 2024, the Business Court issued its opinion and order remanding the case back to the 61st Judicial District Court in Harris County. CR109-27. It held that "parties to a 'civil action[] commenced' before September 1, 2024 may not waive Section 8's 'effective date' provision in order to establish subject-matter jurisdiction in the Business Court under Section 25A.004." CR123. As a result, the Business Court concluded that "[t]he Parties have failed to establish that the Court has subject-matter jurisdiction over this case" and that it was "required to remand this case to the district court." CR125.

But the Business Court also granted the parties' request for a permissive interlocutory appeal and stayed its remand order "pending the resolution of the Parties' permissive interlocutory appeal" "to the extent that the Court has the authority to do so." CR127.

The parties requested permission to appeal from this Court. This Court granted the petition for permissive appeal on January 23, 2025.

This appeal follows.

6

## SUMMARY OF ARGUMENT

This appeal presents a narrow but important question: whether a civil action commenced before September 1, 2024 may be removed to Business Court where the parties have entered into a subsequent agreement expressly consenting to jurisdiction. The Business Court has jurisdiction over such cases because they fall within the scope of the jurisdictional provision found in Section 25A.004(d)(2).

Section 25.004(d)(2) grants the Business Court jurisdiction over "an action that arises out of a contract or commercial transaction in which the *parties to the contract or transaction agreed in* the contract or *a subsequent agreement that the business court has jurisdiction of the action*" where the amount in controversy exceeds $10 million. TEX. GOV'T CODE § 25A.004(d)(2) (emphasis added).

That provision is easily satisfied in this case. The Subsequent Agreement that the parties entered into here is precisely the sort of agreement contemplated by Section 25A.004(d)(2).

But the Business Court below held that the provision in House Bill 19 regarding changes in law being applicable to civil actions commenced on or after September 1, 2024 (Section 8) limited its jurisdiction. This was error. That provision is *not* a jurisdictional provision, and therefore, it can be waived by the parties through consent. This conclusion is derived from plain text, structure, and precedent from the Texas Court of Criminal Appeals.

7

This Court recently construed this provision regarding changes in law in House Bill 19. *See In re ETC Field Services, LLC*, No. 15-24-00131-CV, 2025 WL 582320 (Tex. App.—15th Dist. Feb. 21, 2025, orig. proceeding). Based on Section 8 of House Bill 19, this Court held that "the new removal statute does not apply" to civil actions commenced before September 1, 2024. *Id.* at *1.

In reaching this holding, this Court did *not* characterize this provision as "jurisdictional." Rightly so. Texas courts should avoid drive-by jurisdictional rulings. The *only* jurisdictional provisions in House Bill 19 are the provisions that were codified in Section 25A.004. In other words, the provision in House Bill 19 regarding changes in law is *not* jurisdictional.

That is why this case is different than *ETC*. In *ETC*, one of the parties had *unilaterally* removed, while another party moved to remand. There was no consent. But, unlike *ETC*, both Plaintiff Lone Star and Defendants EagleClaw and CR Permian consented to removal and jointly removed this case to Business Court. Therefore, they have waived the non-jurisdictional provision found in Section 8, which this Court construed in *ETC*.

As a result, this Court should reverse the remand order issued by the Business Court below and remand this case to the Business Court to be adjudicated on the merits.

The Business Court erred in remanding the case back to the 61st Judicial District Court in Harris County. The Subsequent Agreement between the parties confers jurisdiction on the Business Court over this matter, and all the requirements for removal were fulfilled, making removal proper. There is no barrier to subject-matter jurisdiction in this case.

## I. The Business Court Has Jurisdiction Under the Parties' Subsequent Agreement.

The Subsequent Agreement between the parties confers jurisdiction on the Business Court as expressly contemplated by Chapter 25A of the Texas Government Code.

Section 25A.004(d)(2) grants the Business Court jurisdiction over "an action that arises out of a contract or commercial transaction in which the *parties to the contract or transaction agreed in* the contract or *a subsequent agreement that the business court has jurisdiction of the action*" where the amount in controversy exceeds $10 million. TEX. GOV'T CODE § 25A.004(d)(2) (emphasis added).

The requirements of this provision are easily satisfied in this case.

To begin, this is "an action that arises out of a contract or commercial transaction," *id.*, because it arises out of two contracts for the sale and purchase of Y-grade. This is precisely the sort of business litigation that the Legislature anticipated would be litigated in Business Court.

9

Next, "the *parties to the contract or transaction agreed in . . . a subsequent agreement that the business court has jurisdiction of the action.*" *Id.* Indeed, the parties entered into the Subsequent Agreement on September 13, 2024. CR40-46. That agreement establishes the Business Court's authority to preside over this case. CR40-46. The agreement quotes the *precise language* used in Section 25A.004(d)(2) and notes that it "is meant to satisfy the requirements of Section 25A.004 . . . as a 'subsequent agreement that the business court has jurisdiction over this action.'" CR41; TEX. GOV'T. CODE § 25A.004(d)(2).[4]

The amount in controversy exceeds $10 million. *Id.* While heavily disputed, Lone Star alleges "'hundreds of millions of dollars in damages.'" CR018.

The parties expressly consented to personal jurisdiction in the Business Court. CR41 ("The Parties also agree that they are subject to personal jurisdiction in the Texas Business Court."). And they "waive[d] any challenge to the jurisdiction of the Texas Business Court to hear and adjudicate the claims" in the case. CR41.

In sum, the parties have entered into a subsequent agreement as contemplated by the Chapter 25A of the Texas Government Code. *See* TEX. GOV'T. CODE § 25A.004(d)(2). Therefore, the Business Court has jurisdiction over this dispute, and it was error for the Business Court below to conclude otherwise.

---

[4] The Business Court also had jurisdiction under Section 25A.004(d)(1) because this is "an action arising out of a qualified transaction." TEX. GOV'T. CODE § 25A.004(d)(1); *see* CR33 (explaining why this jurisdictional provision is satisfied as well).

10

## II. Section 8 of House Bill 19 Regarding Changes in Law is Not Jurisdictional.

The Business Court below held that House Bill 19 only confers subject-matter jurisdiction for actions commenced on or after September 1, 2024. CR118-21. The court held that the plain text of the statute limited its applicability to cases initiated after the effective date of the bill and that the effective date "unambiguously operates as a jurisdictional provision" that cannot be waived. CR123. This was error.

The relevant provision is found in Section 8 of House Bill 19: "The changes in law made by this Act apply to civil actions commenced on or after September 1, 2024." Act of May 25, 2023, 88th Leg., R.S., ch. 380, § 8 (H.B. 19).

This Court recently construed this provision in *ETC*. Based on the plain language of the provision, this Court held that "the new removal statute does not apply" to civil actions commenced before September 1, 2024. *ETC*, 2025 WL 582320, at *1. This Court reasoned that a case is commenced only upon initial filing, and therefore, a pre-existing action that is removed to Business Court does not satisfy Section 8. *Id.* at *2. Moreover, this Court rejected the argument that the lack of the word "only" in the provision allows for the removal of cases commenced before September 1, 2024. *Id.* at *3.[5]

---

[5] To the extent necessary, EagleClaw and CR Permian preserve their arguments that the changes-in-law provision does *not* foreclose the removal of cases commenced before September 1, 2024 and *allows* such removal based on the plain language of the provision.

11

Importantly, however, *ETC* did *not* hold that the changes-in-law provision is "jurisdictional." Rightly so. As Justice Busby, while sitting on the Fourteenth Court, warned: "Texas courts should guard against 'drive-by jurisdictional' rulings that miss the 'critical difference[s] between true jurisdictional conditions and non-jurisdictional limitations on causes of action.'" *Lapiner v. Maimon*, 429 S.W.3d 816, 838-39 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (Busby, J., dissenting) (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161(2010)).

"Subject-matter jurisdiction refers to a court's statutory or constitutional power to adjudicate a case." *Guardianship of Fairley*, 650 S.W.3d 372, 379 (Tex. 2022). "The subject-matter jurisdiction of Texas courts derives solely from the Texas Constitution and the state statutes." *Id.* Importantly, the Texas Supreme Court is "reluctant to conclude that a statutory requirement affects a court's subject-matter jurisdiction absent clear legislative intent to that effect." *Id.*

A careful examination of House Bill 19 demonstrates that the changes-in-law provision (Section 8) is *not* jurisdictional because there is no "clear legislative intent to that effect." *Id.* Because the provision is *not* jurisdictional, it is waivable though the consent of the parties.

Begin with plain text. There is only one section in House Bill 19 that refers to jurisdiction: the statutory provision that was codified in Section 25A.004 of the Texas Government Code.

12

That section is entitled, "Jurisdiction and Powers." TEX. GOV'T CODE § 25A.004. But that section is contained in Section 1 of House Bill 19, *not* Section 8. *See* Act of May 25, 2023, 88th Leg., R.S., ch. 380, § 1 (H.B. 19). Indeed, the word "jurisdiction" is not used in Section 8 at all. Thus, while there is clear legislative intent that Section 1 contains jurisdictional provisions, there is no such clear legislative intent regarding Section 8.

Next, consider structure. The provisions regarding jurisdiction were codified in Section 25A.004. In subsections (b) through (f) of Section 25A.004, the Legislature codified specific grants of subject-matter jurisdiction. TEX. GOV'T CODE § 25A.004(b)-(f). Then, in subsections (g) and (h), the Legislature codified specific exclusions from jurisdiction. *Id.* § 25A.004(g)-(h). Thus, these subsections work together to create the framework for Business Court subject-matter jurisdiction, both adding and subtracting from jurisdiction. But none of the subtractions include a date restriction. In other words, to construe Section 8 of House Bill 19 as a jurisdictional provision would be to insert additional language into subsection (g) and (h).

In interpreting statutes, Texas courts presume "that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

13

Had the Legislature intended the changes-in-law provision (Section 8) to be jurisdictional in nature, it would have done so explicitly by incorporating it into the codified text of the jurisdictional section. But it did not. This Court should not insert Section 8 as an additional exception to the jurisdictional provisions.

Next, consider the Texas Court of Criminal Appeals' caselaw on effective date provisions. In *Powell v. State*, 897 S.W.2d 307 (Tex. Crim. App. 1994), a plurality of the Court of Criminal Appeals held that a statute's effective date was "absolute," "nonforfeitable," and "nonwaivable"—even though the criminal defendant had consented otherwise. *Id.* 317.

But just a few years later, the court overruled *Powell*. *See Prystash v. State*, 3 S.W.3d 522 (Tex. Crim. App. 1999); *see also Hirad v. State*, 14 S.W.3d 351, 351-52 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (discussing *Prystash*'s overruling of *Powell*).

In *Prystash*, the court used the invited error doctrine to overrule an objection made regarding jury charge error based on an effective date provision. *Prystash*, 3 S.W.3d at 531. The court explained that a party cannot "complain of an action he requested." *Id.* "Just as the law of entrapment estops the State from making an offense of conduct that it induced, the law of invited error estops a party from making an appellate error of an action it induced." *Id.*

14

But this holding would not have been possible if an effective date provision, which is akin to the changes-in-law provision here, is jurisdictional. After all, it is black-letter law that issues regarding subject-matter jurisdiction can be raised for the first time on appeal. *See, e.g.*, *Tex. Propane Gas Ass'n v. City of Houston*, 622 S.W.3d 791, 797 (Tex. 2021) ("[A] jurisdictional holding can never be dicta because subject-matter jurisdiction must exist before we can consider the merits, a challenge to it cannot be waived, and 'we have an obligation to examine our jurisdiction any time it is in doubt.'"); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993) ("Subject matter jurisdiction is an issue that may be raised for the first time on appeal; it may not be waived by the parties."). Thus, under caselaw from the Texas Court of Criminal Appeals, provisions like Section 8 do not implicate subject-matter jurisdiction.

Perhaps what gave the Business Court below pause was the legal axiom that subject-matter jurisdiction cannot be conferred by consent or waiver. CR123; *see also Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000) ("[S]ubject-matter jurisdiction is a power that exists by operation of law only, and cannot be conferred upon any court by consent or waiver." (internal quotations omitted)).

But this axiom only goes so far in this case. To begin, as explained above, Section 8 of House Bill 19 is *not* jurisdictional in nature, and therefore, is waivable.

15

Moreover, although generally subject-matter jurisdiction cannot be conferred by consent, the Legislature specifically allowed for this possibility by providing that parties can "agree[] in the contract or subsequent agreement that the business court has jurisdiction of the action" subject to an exception that is not relevant here. TEX. GOV'T. CODE § 25A.004(d)(2). The Legislature intended for litigants to be able to create jurisdiction in the Business Court where it otherwise would not have existed. The entire thrust of Section 25A.004(d)(2) is that the parties may consent to jurisdiction—even when requirements spelled out in certain other subsections are not fulfilled—if the parties agree to do so.

In this way, the statute encapsulates Texas's longstanding public policy that honors freedom of contract. This statute is far from the first instance of Texas law authorizing jurisdiction or authority over a dispute where it otherwise would not exist. *E.g.*, *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 131 (Tex. 2004) (orig. proceeding) (jury waivers); *In re AIU Ins. Co.*, 148 S.W.3d 109, 114 (Tex. 2004) (orig. proceeding) (forum selection clauses); *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995) (orig. proceeding) (arbitration agreements).

Thus, based on plain text, structure, and caselaw regarding effective date provisions from the Texas Court of Criminal Appeals, this Court should hold that the changes-in-law provision (Section 8) in House Bill 19 is *not* jurisdictional, and therefore, it can be waived by consent of the parties.

16

Here, the parties have entered into the Subsequent Agreement and consented to proceed in Business Court. Therefore, they have waived Section 8's changes-in-law provision and that provision is no barrier to the exercise of subject-matter jurisdiction.

Indeed, an opinion from this Court clarifying that consent cases are different from non-consent cases, and that *ETC* is not a jurisdictional ruling, would be beneficial to the jurisprudence of the State. Even though in construing Section 8 of House Bill 19 in *ETC*, this Court never characterized Section 8 as jurisdictional, lower courts have now begun interpreting Section 8 in this manner. *See, e.g.*, *Cypress Towne Ctr., Ltd. v. Kimco Realty Servs., Inc.*, No. 24-BC11A-0013, 2025 Tex. Bus. 8 (Business Court, 11th Div. Feb. 25, 2025) (charactering *ETC* as a holding regarding the subject-matter jurisdiction of the Business Court). This is exactly the type of drive-by jurisdictional ruling that Justice Busby warned should be guarded against. *Lapiner*, 429 S.W.3d at 838-39 (Busby, J., dissenting).

In sum, Section 8 is *not* a barrier to subject-matter jurisdiction in this case.

## III. All the Other Statutory Requirements for Removal Were Satisfied.

Finally, all the other requirements for removal under the statute were fulfilled. In addition to the "subsequent agreement" language found in section 25A.004(d)(2), the statute sets forth other jurisdictional and removal requirements. All were satisfied here.

***Jurisdictional exclusions.*** None of the jurisdictional carveout provisions—including exclusions involving insurance claims, estates, family law, foreclosures, legal malpractice, personal injuries, or actions by or against governmental entities—apply. *See* TEX. GOV'T CODE § 25A.004(g)–(h).

***Venue.*** Venue was proper in the Eleventh Business Court Division. TEX. R. CIV. P. 355(b)(2)(B); TEX. GOV'T CODE § 25A.003(m). Because the 61st District Court of Harris County, Texas had jurisdiction of this case, the Eleventh Business Court Division (which has jurisdiction over Harris County) was the proper venue.

***Notice of removal.*** Rule 355(a) requires a removing party to file a notice of removal in both the court from which removal is sought and the Business Court. TEX. R. CIV. P. 355(a). The notice of removal must state whether the parties all consent to removal, plead various jurisdictional and venue facts, and contain a copy of the docket sheet and other pertinent filings. TEX. R. CIV. P. 355(b). Those requirements were met here. *See* CR4-22 (containing the Notice of Removal and the docket sheet).

Thus, there are no impediments or defects in removal that would prohibit the Business Court from exercising jurisdiction over the matter or otherwise necessitate remand.

**IV.    Requiring these Parties to Dismiss and Refile the Case in Business Court Will Create Inefficiencies and Prolong Litigation.**

Finally, the parties have gone to great lengths to make sure that this case will proceed in the Business Court. A remand to Harris County district court will serve only to prolong this litigation and hinder the parties from continuing to work towards the efficient conclusion of this case. *See* CR40-46.

If the case is remanded, the Subsequent Agreement will require Lone Star to dismiss and then refile the case. CR42. This new lawsuit, which would be filed after September 1, 2024, would certainly fall within the authority and jurisdiction of the Texas Business Court. *See* TEX. GOV'T CODE § 25A.004(d)(1)-(2); *id.* §25A.006(a); *see also ETC*, 2025 WL 582320, at *3 (contemplating this scenario).

While this process may appear seamless, it will cause numerous procedural and discovery-related issues and only further delay resolution. For example, a number of complex discovery motions are currently pending. *See* CR30 (listing the various motions). A new lawsuit would require the parties to refile these motions, responses, replies, and other accompanying exhibits.

Additionally, several ancillary proceedings for non-party discovery are pending elsewhere. Once the underlying case is dismissed and refiled, those proceedings would potentially need to be dismissed and refiled as well, as the underlying subpoena or letters rogatory may no longer be valid.

19

Finally, given the length of this case, a number of orders on various issues have already been entered. And a significant amount of discovery has occurred as well, including several depositions. Defendant EagleClaw and CR Permian contend that these orders will continue to have force and this discovery counts towards the limits imposed on document discovery and deposition time in any civil matter. But it is likely that Plaintiff Lone Star will take the opposing view—thereby creating even more discovery-related motions practice.

In sum, a remand would create a logistical nightmare, for both the parties and the Business Court. A resolution that does not require the Business Court to wade through and re-hear every issue the parties have confronted over the last four years would hasten the conclusion of this litigation.

## CONCLUSION AND PRAYER

This Court should reverse the Business Court's order remanding the case to the 61st Judicial District Court in Harris County, Texas. Defendants request all other relief to which they are entitled.

Respectfully submitted,

**BECK REDDEN LLP**

By: */s/ Fields Alexander*
    Fields Alexander
    State Bar No. 00783528
    falexander@beckredden.com
    Thomas E. Ganucheau
    State Bar No. 00784104
    tganucheau@beckredden.com
    Parth S. Gejji
    State Bar No. 24087575
    pgejji@beckredden.com
    Mary Kate Raffetto
    State Bar No. 24098296
    mkraffetto@beckredden.com
    Garrett S. Brawley
    State Bar No. 24095812
    gbrawley@beckredden.com
    Cassie Maneen
    State Bar No. 24120989
    cmaneen@beckredden.com
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
(713) 951-3700
(713) 951-3720 – Fax

**ATTORNEYS FOR DEFENDANTS/
JOINT PETITIONERS**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2025 a true and correct copy of the foregoing Brief of Defendants/Joint Petitioners has been electronically filed and served on all counsel of record.

*/s/ Parth S. Gejji*
Parth S. Gejji


**CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of Tex. R. App. P. 9.4(i)(2)(B) because it contains 4,487 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).

2.      This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

Dated:  March 10, 2025

*/s/ Parth S. Gejji*
Parth S. Gejji

# Tab A



**THE BUSINESS COURT OF TEXAS**
**ELEVENTH DIVISION**

| | | |
|---|---|---|
| Lone Star NGL Product Services LLC, | § § § | |
| *Plaintiff,* | § | |
| v. | § | Cause No. 24-BC11A-0004 |
| EagleClaw Midstream Ventures, LLC and CR Permian Processing, LLC, | § § § | |
| *Defendant.* | § | |

---

**OPINION AND ORDER**

---

## I. INTRODUCTION

¶1     Before the Court is (1) the Joint Notice of Removal by Plaintiff Lone Star NGL Product Services LLC ("Lone Star"), Defendant EagleClaw Midstream Ventures, LLC, and Defendant CR Permian Processing, LLC (collectively herein, the "Parties") filed September 17, 2024; (2) the Parties' Joint Brief in Support of Removal to Business Court filed October 16, 2024 ("Joint Brief"); and (3) Lone Star's Additional Brief in Support of Removal to Business Court filed November 4, 2024 ("Lone Star Brief").  The Court held a hearing on this matter on November 12, 2024.  Having considered the Parties' arguments and the relevant law, and subject to the Court's stay of this Order, the Court **ORDERS** that

0110

this suit be remanded to the district court and certifies the controlling question of law discussed herein for permissive interlocutory appeal under Texas Civil Practice & Remedies Code Section 51.014(d). To the extent that the Court has the authority to do so, the Court **STAYS** the remand order contained herein pending the resolution of the Parties' permissive interlocutory appeal under Texas Civil Practice & Remedies Code Section 51.014(e).

## II. PROCEDURAL BACKGROUND

¶2 Pending first for years in the 61st Judicial District Court of Harris County, this lawsuit involves past and ongoing compliance with two natural gas purchase agreements that prescribe daily obligations to sell Y-Grade expiring in 2026.[1] According to the Parties, Lone Star has paid more than $100 million for Y-Grade sold by Defendants under the subject agreements. Lone Star will continue to be invoiced for Y-Grade delivered by Defendants through the remaining life of the agreements.[2] Since Lone Star filed its original petition on May 20, 2021, the Parties have engaged in robust litigation of the underlying substance of this "multi-hundred-million-dollar dispute,"[3] and Defendants

---

[1] Joint Brief at 2.

[2] *Id.* at 9.

[3] *See* Transcript of Record at 13, *Lone Star NGL Product Services LLC v. Eagle Claw Midstream Ventures, LLC*, No. 24-BC11A-0004 (Tex. Bus. Ct. Nov. 12, 2024) (hereinafter, "Transcript of Record") (quotation regarding the amount in controversy). Per the Parties' Joint Brief, there were no fewer than five discovery motions pending at the time of removal, and a discovery master has been appointed to manage disputes regarding certain third-party discovery. *Id.* at 5–6 n. 2. Following removal, the Parties have continued engaging vehemently over issues relating to apex depositions and discovery sought in out-of-state litigation.

2

have incurred over $3 million in attorneys' fees.[4]  When this Court first opened for business on September 1, 2024,[5] this case was 1,200 days old.[6]

¶3     On September 13, 2024, the Parties entered into a Rule 11 Agreement (defined by the Parties as the "Subsequent Agreement") making "clear that authority, jurisdiction, and venue exists in the Texas Business Court."[7]  Pertinent portions of the seven-page Rule 11 Agreement[8] are set forth below:

> The Parties agree that the Current Lawsuit, including all claims and causes of action asserted as of the Effective Date of this Agreement, is within the jurisdiction of the Texas Business Court, as established by Chapter 25A of the Texas Government Code. The Parties also agree that they are subject to personal jurisdiction in the Texas Business Court.
>
> The Parties acknowledge that this Agreement is meant to satisfy the requirements of Section 25A.004 of the Texas Government Code as a "subsequent agreement that the business court has jurisdiction over the action."
> . . .
> The Parties intend that this Agreement—executed after September 1, 2024— is to allow the Current Lawsuit to be removable to the Texas Business Court.

---

[4] Defs.' Mot. for Protection and Mot. to Quash Dep. of Joseph Payne Under the Apex Dep. Doctrine at 5 n. 9 (filed in this Court on November 29, 2024, following removal).

[5] *See* Tex. H.B. 19, § 5, 88th Leg., R.S. (2023) ("Except as otherwise provided by this Act, the business court is created September 1, 2024.").

[6] In the Spring of 2021, the Bill that created this Court and its jurisdiction—House Bill 19 (herein, "H.B. 19" or "the Bill")—had not yet been filed in the Texas House of Representatives.  Tex. H.B. 19, 88th Leg., R.S. (2023) "Bill Stages," TEXAS LEGISLATURE ONLINE, https://capitol.texas.gov/BillLookup/BillStages.aspx?LegSess=88R&Bill=HB19 (last visited Dec. 2, 2024) (H.B. 19 was filed in the House of Representatives on February 28, 2023, and was signed by Governor Greg Abbott on June 9, 2023); *see* Jack Buckley DiSorbo, *A Primer on the Texas Business Court*, 76 BAYLOR L. REV. 360, 384–87 (2024) (discussing the passage of H.B. 19 and S.B. 1045 in the 2023 legislative session).  When Governor Abbott signed H.B. 19 into law on June 9, 2023, the Bill included a limiting provision, Section 8, which states: "The changes in law made by this Act apply to civil actions commenced on or after September 1, 2024."  Tex. H.B. 19 at § 8.

[7] Joint Brief at 3.

[8] "[T]he parties entered into a September 13th agreement.  It is a seven-page-long agreement choosing this Court's forum, choosing this Court as venue, waiving personal jurisdiction challenges, and giving this Court all of the jurisdictional trappings that the parties are allowed to give the Court."  Transcript of Record at 11.

0112

In the event it is determined that the Texas Business Court does not have the authority to hear the Current Lawsuit, the Parties also intend this provision to allow the Current Lawsuit to be non-suited without prejudice and refiled in the Business Court as the Business Court Lawsuit.[9]

. . .

"Primary Intent": The Parties intend this Agreement to be interpreted to afford the broadest possible reservation of the Parties' rights to assert any claims, causes of action, and/or defenses in the Business Court that were or could have been asserted in the Current Lawsuit as of the Effective Date.

"Secondary Intent": The Parties also intend for this Agreement to be interpreted consistent with ensuring the Business Court has jurisdiction over the Current Lawsuit.[10]

As the Parties elucidate, "the Subsequent Agreement was not merely an agreement to remove the case to Business Court. Instead[,] the Subsequent Agreement reflects a *negotiated, holistic agreement* between the Parties that the dispute will be adjudicated by the Business Court."[11] The Parties succinctly express their intentions and requisite methodology at the outset of their Joint Brief:

The Subsequent Agreement also contemplates nonsuiting this dispute and re-filing an identical lawsuit in the Business Court if the Court remands the case to the 61st Judicial District Court. Per the Parties' agreement, this dispute will be heard by the Business Court. But remanding the three and a half year old case now creates unnecessary hurdles that would otherwise be avoided if this removed lawsuit is permitted to proceed.[12]

---

[9] Joint Brief at Exhibit 1 (II. Agreement to Jurisdiction of the Texas Business Court).

[10] *Id.* at Exhibit 1 (XI. Intent of Agreement).

[11] Joint Brief at 3 (emphasis added).

[12] *Id.* at 2, n. 1. Scrutiny of the Parties' Rule 11 Agreement and its contingencies reveals an appreciation of the potential ramifications of utilizing the newly created Chapter 25A removal procedures in a pre-September 1, 2024 action. Of note, significant legal commentary, albeit neither authoritative nor dispositive, existed on this subject prior to September 1, 2024. *See* MEETING OF THE TEX. SUP. CT. ADVISORY COMM., 35552:4–15 (Oct. 13, 2023) (transcript available at https://www.txcourts.gov/media/1457501/23-10-13-scac-transcript.pdf) (last visited Dec. 3, 2024) (Supreme Court Advisory Committee discussing that existing cases would have to be nonsuited and re-filed to be subject to the Court's jurisdiction); Lonny Hoffman, *Editor's Comments*, 106 THE ADVOCATE 3 (Spring 2024) ("Our ambition with this volume was to anticipate the most pressing questions and to *tentatively suggest* some answers.") (emphasis added); Senator Bryan Hughes & Trey Cox, *Trailblazing for Tomorrow: The Texas Business Court's Progressive Revamp of the State Judicial System*, 106 THE ADVOCATE 18, 19 (Spring 2024) ("Further, existing matters will not suddenly be thrust into a tumultuous mass removal, as HB 19 stipulates the TBC will apply only to those civil actions commenced on

4

¶4     On September 17, 2024, the Parties filed their Joint Notice of Removal to the Business Court.  The pleaded basis for the Business Court's jurisdiction over the suit was Section 25A.004(d) of the Texas Government Code, which states:

> (d) The business court has civil jurisdiction concurrent with district courts in the following actions in which the amount in controversy exceeds $10 million, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs:
>
> (1) an action arising out of a qualified transaction;[13]
>
> (2) an action that arises out of a contract or commercial transaction in which the parties to the contract or transaction agreed in the contract or a **subsequent agreement** that the business court has jurisdiction of the action, except an action that arises out of an insurance contract; . . . .

TEX. GOV'T CODE § 25A.004(d)(1)–(2) (emphasis added).  In their Notice of Removal, the Parties ascribe outsize meaning to the timing of their Rule 11 Agreement, stating "[c]rucially, that 'subsequent agreement' was entered into on September 12, 2024—**after** the Business Court began operating on September 1, 2024."[14]

¶5     By its order of September 26, 2024, the Court directed the Parties to file briefing concerning the propriety of this suit's removal to the Texas Business Court and

---

or after September 1, 2024."); Bryan O. Blevins, Jr. & Ashlynn Wright, *A Business Court*, 106 THE ADVOCATE 21, 23 (Spring 2024) ("Presumptively, this provision would not allow a case filed before September 1, 2024, to be removed, nor an action that does not meet the subject[-]matter jurisdiction of the Business Court.").

[13] "'Qualified transaction' means a transaction, other than a transaction involving a loan or an advance of money or credit by a bank, credit union, or savings and loan institution, under which a party: (A) pays or receives, or is obligated to pay or is entitled to receive, consideration with an aggregate value of at least $10 million; or (B) lends, advances, borrows, receives, is obligated to lend or advance, or is entitled to borrow or receive money or credit with an aggregate value of at least $10 million."  TEX. GOV'T CODE § 25A.001(14).

[14] Joint Notice of Removal at 2 (emphasis in original).

0114

regarding the Court's authority and jurisdiction to hear the suit. On October 16, 2024, the Parties filed the Joint Brief.

¶6    On October 18, 2024, the Court invited further briefing from the Parties regarding what effect, if any, Section 8 of [this Court's enabling legislation,][15] H.B. 19[16] has on the Court's authority to hear this case. On November 4, 2024, Lone Star filed the Lone Star Brief. The Court held a hearing on this matter on November 12, 2024.

### III. THE PARTIES' ARGUMENTS

¶7    In their briefs, the Parties presented a series of arguments in favor of removal, untempered by the usual adversarial process. The Parties' jurisdictional arguments are both rooted in the text of Chapter 25A:

i.    Texas Government Code Section 25A.004(d)(2) gave the Parties the right to agree that the Business Court has jurisdiction of the action—or to "create jurisdiction in the Business Court"—notwithstanding any "effective date"[17] provisions included in the Bill.[18]

ii.   This dispute concerns a qualified transaction under Texas Government Code Section 25A.004(d)(1); and complies with all other statutory requirements for the exercise of jurisdiction.[19]

---

[15] *See* Procedural Background, *supra* note 6.

[16] *See* Tex. H.B. 19 at § 8 ("The changes in law made by this Act apply to civil actions commenced on or after September 1, 2024").

[17] Of note, the true effective date provision of H.B. 19 is Section 9. *See id.* at § 9 ("This Act takes effect September 1, 2023.").

[18] *See generally* Joint Brief at 4–5; Lone Star Brief at 2–5. At the hearing, the Parties argued, "Section 8 as an effective date is not a subject-matter limitation on the Court. As such, it's a limitation that the parties can agree around." Transcript of Record at 12. The Parties believe that "[c]onsent cases are fundamentally different than non-consent cases." *Id.* at 17. "Section 8 is a safeguard for parties who are already embroiled in litigation and don't consent to be in business court." *Id.* at 31. "It is not a broad all-encompassing effective date that precludes any application of House Bill 19 prior to September 1, 2024, over the parties' consent." *Id.* at 36. "The Subsequent Agreement is entitled to be enforced in this Court, pursuant to Texas' paramount public policy favoring freedom of contract, as envisioned by the Texas Legislature in House Bill 19." Lone Star Brief at 5. In essence, according to the Parties, "[w]hen there is consent between the parties—that is between the plaintiffs and the defendants—does jurisdiction exist for cases that were commenced before September 1st, 2024? The answer to that question is irrefutably yes." Transcript of Record at 17.

[19] Joint Brief at 9–11.

0115

¶8     Additionally, the Parties articulated that Section 8 of H.B. 19—which reads "[t]he changes in law made by this Act apply to civil actions commenced on or after September 1, 2024"—presents no bar to this Court's ability to adjudicate this dispute:

i.      Section 8 of House Bill 19 does not limit the Business Court's jurisdiction to post-September 1, 2024 cases, owing to the omission of the word "only" from Section 8. In other words, if the Texas Legislature wanted the Business Court's jurisdiction to be limited to civil actions commenced on or after September 1, 2024, Section 8 would have read "The changes in law made by this Act apply ***only*** to civil actions commenced on or after September 1, 2024."[20]

ii.     As Section 8 only applies to "changes in law made by" H.B. 19, Lone Star argues that Sections 1 through 3 of House Bill 19 contain changes in law, but sections 4 through 7 do not. They argue that Section 5, which unambiguously creates the Business Court,[21] also vests the Business Court with "subject[-]matter jurisdiction to adjudicate this dispute."[22]

iii.    In the event Section 8 does limit the Court's jurisdiction, Section 8 can be waived by the Parties. Because the Parties agree to the jurisdiction of the Business Court, they will be estopped from arguing it was wrong for the Court to adjudicate this dispute under the doctrines of waiver and invited error. In making this argument, the Parties affirmatively allege that the effective-date restrictions in Section 8 are not "unwaivable subject-matter jurisdiction barriers."[23]

¶9     Finally, the Parties make an appeal solely based on the alleged potential consequences of a remand. Because the Parties have agreed to non-suit and refile this case in the event of a remand, remanding this case will not keep the dispute out of the Business Court. Purportedly, however, a remand will cause significant difficulties in the discovery process and increase costs for all Parties.[24]

---

[20] Lone Star Brief at 6–9.
[21] *See* Tex. H.B. 19 at § 5 (stating, in its entirety, "Except as otherwise provided by this Act, the business court is created September 1, 2024").
[22] Lone Star Brief at 5–6.
[23] Joint Brief at 7–8; Lone Star Brief at 9–10.
[24] Joint Brief at 5–7.

0116

¶10    At the November 12, 2024 hearing, the Parties appeared to argue beyond the briefing.  In essence, because (i) portions of the "effective date" provisions of H.B. 19 and S.B. 1045 (which created the Fifteenth Court of Appeals) are nearly identical; and (ii) the Fifteenth Court of Appeals has accepted transfers of pre-September 1, 2024 cases, the Parties argue that no bar to this Court's exercise of jurisdiction over pre-September 1, 2024 removals exists.[25]

¶11    In keeping with their elaborate strategy, the Parties have also sought the Business Court's first permissive interlocutory appeal.  Specifically, the Parties request that, in the event the Court finds that it lacks jurisdiction over this case, the Court certify a permissive interlocutory appeal on the following question: "[C]an a civil action that was commenced before September 1, 2024 be removed to Business Court where the parties entered into a subsequent agreement expressly consenting to the jurisdiction of the Business Court?"[26]

## IV. LEGAL STANDARD

¶12    For every judicial proceeding, "subject-matter jurisdiction must exist before we can consider the merits," and a court must examine its jurisdiction "any time it is in doubt."  *Tex. Propane Gas Ass'n v. City of Houston*, 622 S.W.3d 791, 797 (Tex. 2021) (quoting *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 774 (Tex. 2020)); *see also Tex.*

---

[25] Transcript of Record at 11–12.  Beyond the arguments discussed in the body of the opinion, Lone Star also sought to ventilate the effect of "an August 13, 2024 memorandum from the Office of Court Administration to Texas District and County Clerks regarding the 'Creation of the Business Court, Effective September 1, 2024.'"  Lone Star Brief at 9.  Lone Star argues that pronouncements from the Office of Court Administration are irrelevant to the Court's authority to hear the case.  *Id.*  The Court does not base this opinion on the OCA memorandum.  *Cf.* Citations to Legal Commentaries, *supra* note 12 (acknowledging that the Bar's discussion of Section 8 is neither dispositive nor authoritative).

[26] Joint Brief at 11–12.

0117

*Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993) ("Subject[-]matter jurisdiction is never presumed and cannot be waived."). "Whether a court has subject[-]matter jurisdiction is a question of law." *Tex. Disposal Sys. Landfill, Inc. v. Travis Cent. Appraisal Dist.*, 694 S.W.3d 752, 757 (Tex. 2024).

¶13   A Notice of Removal to Business Court must plead facts to establish the Business Court's authority to hear the action. TEX. R. CIV. P. 355(b)(2)(A).[27]  If the Business Court does not have jurisdiction of a removed action, the Business Court shall remand the action to the court in which the action was originally filed. TEX. GOV'T CODE § 25A.006(d); TEX. R. CIV. P. 355(f)(1).

## V. ANALYSIS

**A. The Parties cannot rely on Chapter 25A to establish the Business Court's authority to hear this action.**

**i. Chapter 25A—the most significant "change[] in law" made by H.B. 19—only "appl[ies] to civil actions commenced on or after September 1, 2024."**

¶14   As Lone Star urges in its brief, "Section 8 should be read in harmony with the remainder of House Bill 19. . . ."[28] The Court concurs. "As with every question of statutory construction, our duty is to accurately articulate the meaning of the enacted text—here," of H.B. 19.[29] *Brown v. City of Houston*, 660 S.W.3d 749, 752 (Tex. 2023). Indeed, "H.B.

---

[27] The "Rules of Practice in the Business Court" are contained in Part III of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 352–60. For a discussion of the procedural background of the Rules' creation, see, for instance, Marcy Hogan Greer & Hon. Emily Miskel, *Proposed Rules for the New Texas Business Court*, 106 THE ADVOCATE 15 (Spring 2024).

[28] Lone Star Brief at 8.

[29] In this context, the enrolled version of H.B. 19 is the binding statute enacted by the Texas Legislature. *Jorrie v. Charles*, No. 24-BC04B-0001, 2024 Tex. Bus. 4, 2024 WL 4796436 at *3 (Tex. Bus. Ct. Nov. 7, 2024) (citing *Ass'n of Texas Pro. Educators v. Kirby*, 788 S.W.2d 827, 829 (Tex. 1990)). Accordingly, when analyzing the text of Chapter 25A to determine the Court's authority and jurisdiction to hear the case, the Court must apply Section 8 and presume that the enrolled bill accurately expresses the Texas Legislature's

19's plain 'text is the alpha and omega of the interpretive process.'" *Energy Transfer LP v. Culberson Midstream LLC*, No. 24-BC01B-0005, 2024 Tex. Bus. 1, 2024 WL 4648110, at *3 (Tex. Bus. Ct. Oct. 30, 2024) (citing *In re Panchakarla*, 602 S.W.3d 536, 541 (Tex. 2020); *BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017)).

¶15    "When the text unambiguously answers a question, our inquiry ends." *Brown*, 660 S.W.3d at 752.  Long-settled Texas law dictates that "[e]very word of a statute is presumed to have been used for a purpose, and a cardinal rule of statutory construction requires that each sentence, clause, phrase and word be give[n] effect if reasonably possible." *Eddins-Walcher Butane Co. v. Calvert*, 298 S.W.2d 93, 96 (Tex. 1957).[30]

¶16    When Governor Greg Abbott signed H.B. 19 into law on June 9, 2023, the enrolled version of the Bill included two sections which are pertinent to this Opinion:

    i.       Section 1, which vests the Court with its jurisdiction, and sets forth the text of the new Chapter 25A of the Texas Government Code,[31] and

    ii.      Section 8, which states: "The changes in law made by this Act apply to civil actions commenced on or after September 1, 2024."[32]

¶17    Lone Star argues that Section 8 would only limit the applicability of the changes in law made by H.B. 19 if they were said to apply "***only*** to civil actions commenced

---

intent. *XTO Energy, Inc. v. Houston Pipe Line Co.*, No. 24-BC11B-0008, 2024 Tex. Bus. 6 at ¶ 10 (Tex. Bus. Ct. Nov. 26, 2024); *see* TEX. GOV'T CODE § 311.029 (under the Code Construction Act, "the language of the enrolled bill version controls" over any subsequent printing of the statute).

[30] *See* Lone Star Brief at 8.

[31] Tex. H.B. 19 at § 1 (emphasis added); *see* TEX. GOV'T CODE § 25A.004 (entitled "Jurisdiction and Powers"). As noted above, Lone Star admits that Section 1 of H.B. 19 constitutes a change in law.  *See* Parties' Arguments, *supra* ¶ 8.ii; Lone Star Brief at 5–6.

[32] Tex. H.B. 19 at § 8.

10

on or after September 1, 2024."[33]  This is not a novel argument.  To date, no division of the Business Court has accepted this interpretation of Section 8.[34]  No effort has been made to distinguish this iteration of the "only" argument.  Thus, no reason exists for the Court to differ from its brethren.  On its face, Section 8 unambiguously limits the applicability of any "change in law" made by H.B. 19 to "civil actions commenced on or after September 1, 2024."[35]

¶18    The introduction of Section 1 [and the functional preamble to the text of Chapter 25A] reads: "Subtitle A, Title 2, Government Code, is ***amended*** by ***adding*** Chapter 25A to read as follows: . . . ."[36]  Putting aside its auxiliary purposes, the plain thrust of Section 1 and Chapter 25A is to ***change Texas Law*** to create the legal framework for the Business Court ***and vest it with its jurisdiction***.[37]  By a simple page count, the text of Chapter

---

[33] *See* Lone Star Brief at 6–9.

[34] *Energy Transfer*, 2024 WL 4648110, at *3 (rejecting "only" argument, relying on the Negative Implication Canon); *Synergy Global Outsourcing, LLC v. Hinduja Global Solutions, Inc.*, No. 24-BC01B-0007, 2024 Tex. Bus. 2 at 9–11 (Tex. Bus. Ct. Oct. 31, 2024) (identical analysis); *Tema Oil and Gas Co. v. Etc Field Services, LLC*, No. 24-BC08B-0001, 2024 Tex. Bus. 3, 2024 WL 4796433, at *4 (Tex. Bus. Ct. Nov. 6, 2024) ("[T]here was no need for the legislature to insert 'only' or other limiting clarifying phrases in the applicability clause to expressly indicate that the new law did not apply retroactively to non-existing pending cases.  It would have been superfluous for the legislature to have done so."); *Winans v. Berry*, No. 24-BC04A-0002, 2024 Tex. Bus. 5, 2024 WL 4796435, at *2 (Tex. Bus. Ct. Nov. 7, 2024) (relying on the reasoning from *Tema Oil* to dispose of this argument); *XTO Energy*, 2024 Tex. Bus. 6 at ¶¶ 11–14 ("[T]his reading violates at least three canons of construction.").

[35] *See id.*; *Tema Oil*, 2024 WL 4796433, at *3 ("Section 8 is unambiguous and clear on its face. . . . In plain and common terms, Section 8, when construed in harmony with the other provisions of H.B. 19, expresses the legislative intent that cases filed before September 1, 2024, cannot be removed to the Business Court.").

[36] Tex. H.B. 19 at § 1 (emphasis added).

[37] *See id.*; TEX. GOV'T CODE § 25A.002–05.  Albeit solely for the purpose of context herein, Justice Evan A. Young has characterized the establishment of the Business Court in H.B. 19 [and the Fifteenth Court of Appeals in S.B. 1045] as "the most substantial ***modification*** of the judicial system of our state since 1891." Keenan Willard, *Texas Business Court [J]udges [S]worn in at Fort Worth Ceremony*, NBC DFW (September 19, 2024, 10:26 PM), https://www.nbcdfw.com/news/local/first-texas-business-court-judges-sworn-in/3650590/?os=qtft_2&ref=app (last visited Dec. 7, 2024) (emphasis added); *see also* DiSorbo, *supra* note 6, at 360 (referencing the creation of the Business Court as "[t]he most sweeping ***change*** to the state judiciary since the early 2000s tort reform.") (emphasis added).

11

25A occupies twenty-two of the twenty-seven pages of the enrolled version of H.B. 19.[38]

Certainly, Chapter 25A is the most significant "change[] in law" in H.B. 19, both in terms of volume and substance.[39]

¶19　Because the present lawsuit commenced[40] long before September 1, 2024, the Court holds that the Parties may not rely on the provisions of Chapter 25A to justify subject-matter jurisdiction in the Business Court, regardless of how innovative their arguments may be.　Therefore, the Court need not address any of the Parties' arguments concerning the interpretation of Texas Government Code Section 25A.004(d).　This conclusion is consistent with the consensus view of Section 8 in the Business Court.[41]

### ii. The Parties may not rely on the doctrines of waiver, estoppel, or invited error to create subject-matter jurisdiction in the Business Court.

¶20　In the alternative, the Parties argue that "[t]he fact that a statutory 'effective date' exists in a bill does not mean that that date cannot be waived."[42]　The Parties wish for

---

[38] This portion of the analysis refers to the enrolled version of the Bill which is posted to the Texas Legislature's website.　Tex. H.B. 19, 88th Leg., R.S. (2023) "Text," TEXAS LEGISLATURE ONLINE, https://capitol.texas.gov/BillLookup/Text.aspx?LegSess=88R&Bill=HB19 (last visited Dec. 3, 2024).

[39] *See Jorrie*, 2024 WL 4796436 at *2 ("The Act's most substantial change in the law is the addition of Chapter 25A, which includes the provisions permitting removal to the Business Court."); *Energy Transfer*, 2024 WL 4648110, at *3 ("Since chapter 25A in its entirety is a change in Texas law, it follows that § 25A.006's removal provisions also change Texas law."); *Tema Oil*, 2024 WL 4796433, at *4 ("Because Chapter 25A in its entirety is a change of law, it follows logically that Section 25A.006's removal provisions are changes in law, too."); *Winans*, 2024 WL 4796435, at *2 ("This argument ignores the plain language of the enabling legislation, which expressly states the changes in this law, i.e. Chapter 25A and its removal procedure, apply to cases commenced on or after September 1, 2024."); *XTO Energy*, 2024 Tex. Bus. 6 at ¶ 13 ("Thus, the Act's express statement that its changes in law apply to 'cases commenced on or after September 1, 2024' necessarily implies a reverse inference: that the change in law—removal, in this instance—does not apply to cases that were on file before that date.").

[40] The Parties do not contest that the commencement date for this action was prior to September 1, 2024.　For a discussion of the meaning of "commenced" in the context of H.B. 19, see *Tema Oil*, 2024 WL 4796433, at *3; *Jorrie*, 2024 WL 4796436 at *2.

[41] *See generally* authorities cited, *supra* note 39.

[42] Lone Star Brief at 10, n. 3.

0121

the Court to condone a waiver, or invitation of error concerning the "effective date"

provision of Section 8, and thereby maintain jurisdiction over this case:

> The parties have entered into the Subsequent Agreement, jointly requesting that the Court adjudicate this dispute. [H.B. 19's] effective date is not "absolute," "nonforfeitable," or "nonwaivable." To the contrary, the parties jointly and expressly invite the Court to adjudicate this dispute.[43]

¶21 To justify this argument, the Parties cite *Prystash v. State*, 3 S.W.3d 522

(Tex. Crim. App. 1999), which overruled *Powell v. State*, 897 S.W.2d 307, 317 (Tex. Crim.

App. 1994), by employing the doctrine of "invited error." The *Prystash* court held that

since a criminal defendant had requested a certain jury instruction, he was estopped from

complaining about its defectiveness on appeal. *Prystash*, 3 S.W.3d at 529–32. While there

are clear and binding authorities addressing waiver, estoppel, and invited error surrounding

a civil court's subject-matter jurisdiction,[44] the Parties focus on *Prystash* because the

portion of the relevant statute which the criminal defendant waived was its "effective date"

provision.[45]

¶22 At the hearing on this matter, the Parties stated, "The *Prystash* case is very

clear that an effective date in a statute is not an ***unwaivable . . . always appealable subject-***

***matter issue***."[46] Indeed, "[s]ubject-matter jurisdiction is an issue that may be raised for the

---

[43] Joint Brief at 8.

[44] *See, e.g.,* authorities cited, *infra* ¶ 22.

[45] *See Prystash*, 3 S.W.3d at 529–32. At the hearing, the Parties posited, "if in *Prystash*[,] a party can tell a Court to apply a statute outside of its effective date, and that is enforceable in the capital murder context, it is certainly enforceable in the context where you have two publicly traded companies in a multiple-hundred-million-dollar dispute entering into a seven-page long agreement that they want this case to be adjudicated by this Court." Transcript of Record at 13. Nevertheless, the law remains clear that the factual context of an attempted waiver remains irrelevant if the waiver is alleged to confer subject-matter jurisdiction. *See* authorities cited, *infra* ¶ 22.

[46] *Id.* at 12 (emphasis added).

0122

first time on appeal; [and] it may not be waived by the parties." *Tex. Ass'n of Bus.*, 852 S.W.2d at 445; *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000) ("[S]ubject-matter jurisdiction is a power that exists by operation of law only, and cannot be conferred upon any court by consent or waiver.") (internal quotations omitted); *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012) (explaining that a judgment is void when a court lacks subject-matter jurisdiction). Likewise, the doctrine of invited error cannot serve as the basis for subject-matter jurisdiction where it otherwise does not exist. *Interest of A.F.*, 653 S.W.3d 730, 745 (Tex. App.—Fort Worth 2019, no pet.) (citing *In re Crawford & Co.*, 458 S.W.3d 920, 928 n. 7 (Tex. 2015)). Thus, the success or failure of the Parties' waiver and invited error arguments turns on the Court's determination of whether Section 8 of H.B. 19 is a jurisdictional provision in this context.

¶23    The Court finds that Section 8 of H.B. 19 unambiguously operates as a jurisdictional provision when applied to Texas Government Code Section 25A.004 (entitled "Jurisdiction and Powers").[47] Therefore, the Court holds that parties to a "civil action[] commenced" before September 1, 2024 may not waive Section 8's "effective date" provision in order to establish subject-matter jurisdiction in the Business Court under Section 25A.004.

---

[47] *See Jorrie*, 2024 WL 4796436, at *3 ("The court concludes that Section 8 is jurisdictional."); ANALYSIS, *supra* at Section A.i ("Chapter 25A—the most significant 'change[] in law' made by H.B. 19—only 'appl[ies] to civil actions commenced on or after September 1, 2024.'").

14

**iii. Because the text of S.B. 1045 explicitly provides for the transfer of pre-September 1, 2024 appeals, the Parties' analysis of its effective date provision does not withstand scrutiny.**

¶24  At the hearing, the Parties added an argument that Section 8 is not a jurisdictional limitation on this Court by comparing it to S.B. 1045, which created the Fifteenth Court of Appeals:

> Senate Bill 1045, Section 1.1[5], has an almost identical effective date provision that says the changes in law made by this act, Senate Bill No. 1045, apply to appeals perfected on or after September 1st, 2024.  And as this Court knows, when that court began to exist on September 1st, 2024, all of the existing appeals that were within that court's jurisdiction, were transferred to that court.  And that court had subject-matter jurisdiction to adjudicate those appeals and has been adjudicating those appeals and the constitutionality of that court has been upheld by the Texas Supreme Court.  And so Section 8 as an effective date is not a subject-matter limitation on the Court.[48]

¶25  The Court recognizes that Section 1.15(a) of S.B. 1045 states as follows: "The changes in law made by this Act apply to appeals perfected on or after September 1, 2024."[49]  However, brief scrutiny of Section 1.15 reveals a section (b), which was neither discussed by the Parties at oral argument nor mirrored in H.B. 19's Section 8:

> (b) On September 1, 2024, all cases pending in other courts of appeal that were filed on or after September 1, 2023, and of which the Court of Appeals for the Fifteenth Court of Appeals District has exclusive intermediate appellate jurisdiction are transferred to the Court of Appeals for the Fifteenth Court of Appeals District.[50]

---

[48] Transcript of Record at 11–12.
[49] Tex. S.B. 1045, § 1.15(a), 88th Leg., R.S. (2023).
[50] *Id.* at § 1.15(b).

0124

Evidently, Section 1.15(b)—and not Section 1.15(a)—governs the transfer of pre-September 1, 2024 appeals. No equivalent language appears in H.B. 19's Section 8. Thus, the Court does not find this argument persuasive.

### iv. The Parties' arguments regarding judicial efficiency and the consequences of remand do not affect the Court's lack of subject-matter jurisdiction.

¶26    As noted above, the Parties argue that because they have already agreed to non-suit and refile in the Business Court, it would be sensible and efficient for the Court to simply maintain jurisdiction of the case.[51]  Of course, a policy of preferring efficient processes cannot supersede the bedrock requirement of subject-matter jurisdiction. To the contrary, because any judgment rendered by a court without subject-matter jurisdiction would be void,[52] the dedication of any further Court resources to this matter (prior to non-suit and refiling) would be, at a minimum, a misallocation.

## VI. CONCLUSION

¶27    The Parties have failed to establish that the Court has subject-matter jurisdiction over this case. *See* TEX. R. CIV. P. 355(b)(2)(A).  As a result, the Court is required to remand this case to the district court. *See* TEX. GOV'T CODE § 25A.006(d) ("If the business court does not have jurisdiction of the [removed] action, the business court *shall* remand the action to the court in which the action was originally filed.") (emphasis added).  Therefore, subject to the Court's stay issued in Paragraph 30 below, it is

---

[51] Joint Brief at 5–7 (Argument Section I.B, entitled "Remanding This Case Will [N]ot Keep This Dispute [O]ut of Texas Business Court.").  According to the Parties, a remand would cause difficulties with live motions and discovery. *Id.*
[52] *See* ANALYSIS, *supra* ¶ 22.

0125

**ORDERED** that the Business Court Clerk shall remand this cause to the 61st Judicial District Court of Harris County, Texas.

¶28    In addition, the Court grants the Parties' request for a permissive interlocutory appeal under Texas Civil Practice & Remedies Code Section 51.014(d). The Court grants the request because the legal issue considered by this Court—whether "a civil action that was commenced before September 1, 2024 [may] be removed to Business Court where the parties entered into a subsequent agreement expressly consenting to the jurisdiction of the Business Court"—is a controlling question of law as to which there is substantial ground for difference of opinion.[53]  Additionally, a determination by the Court of Appeals of the legal issue here would materially advance the ultimate termination of this litigation.[54]    On this matter, the Court echoes the Parties' argument—a permissive interlocutory appeal "advance[s] the ultimate termination of this litigation by giving both parties, all parties, certainty as to the jurisdictional issues before [the Court], whether we're confronting them following a remand and a nonsuit and a refiling or following a permissive appeal. . . .[N]ot only will it give certainty to litigants around the state, but . . . it will give . . . certainty to these parties that there's not some jurisdictional trap that [they] might be confronted with on appeal."[55]

---

[53] *See generally* Joint Brief at 11–12 (permissive appeal briefing).  It appears that a meaningful number of Business Court litigants believe that pre-September 1, 2024 cases may be removed.  A significant proportion of the cases removed to the Business Court to date were on file in the district courts prior to September 1, 2024.

[54] *Id.*

[55] Transcript of Record at 40; *see also* TEX. R. CIV. P. 168 ("The permission . . . must state why an immediate appeal may materially advance the ultimate termination of the litigation.").

17

¶29    This Court is cognizant of the Section 51.014(d) case law.  Given that the Texas Business Court is in its nascent stages, the Court certifies the permissive interlocutory appeal to provide the Fifteenth Court of Appeals an opportunity to scrutinize this seminal issue, give guidance to the Business Court, and set clear precedent concerning the removal of actions which were pending prior to September 1, 2024.

¶30    Further, to the extent that the Court has the authority to do so, the Court **STAYS** the remand order contained herein pending the resolution of the Parties' permissive interlocutory appeal under Texas Civil Practice & Remedies Code Section 51.014(e).

SO ORDERED.

_____
Hon. Sofía Adrogué
Texas Business Court, Eleventh Division

DATED: December 20, 2024

18

0127

# Tab B



September 12, 2024

Norton Rose Fulbright US LLP
1550 Lamar Street, Suite 2000
Houston, Texas 77010-4106
United States of America

Fields Alexander
Tom Ganucheau
Garrett Brawley
Cassie Maneen
*Counsel for EagleClaw Midstream Ventures, LLC*
*and CR Permian Processing, LLC*
***via email***

Direct line +1 713 651 5452
timothy.shinn@nortonrosefulbright.com

Tel +1 713 651 5151
Fax +1 713 651 5246

Re:     *Lone Star NGL Product Services, LLC (in its individual capacity and as assignee) v. EagleClaw Midstream Ventures LLC and CR Permian Processing LLC*, No. 2021-30388 in the 61st Judicial District of Harris County; Rule 11 Agreement Regarding Nonsuit of Current Lawsuit, Tolling of Claims, and Re-filing of Claims and Causes of Action in the Texas Business Court

Counsel,

The purpose of this correspondence is to memorialize the Parties' agreement regarding the removal and/or re-filing of claims and causes of action currently pending in *Lone Star NGL Product Services, LLC (in its individual capacity and as assignee) v. EagleClaw Midstream Ventures LLC and CR Permian Processing LLC*, No. 2021-30388 in the 61st Judicial District of Harris County in a new proceeding before the Eleventh Division of the Texas Business Court.

## I.     <u>Definitions.</u>

- The "Agreement" or "Rule 11 Agreement" means this agreement, in its entirety.

- "Lone Star" or "Plaintiff" means Lone Star NGL Product Services, LLC.

- "ECMV" means EagleClaw Midstream Ventures, LLC.

- "CR" means CR Permian Processing, LLC.

- "Defendants" or "EagleClaw" refers to ECMV and CR, collectively, each a "Defendant."

- "Party" and "Parties" means Lone Star, ECMV, and CR, individually and collectively, respectively.

- "Current Lawsuit" means *Lone Star NGL Product Services, LLC (in its individual capacity and as assignee) v. EagleClaw Midstream Ventures LLC and CR Permian Processing LLC*, No. 2021-30388 in the 61st Judicial District of Harris County.

- "Business Court" means the Texas Business Court.

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

0040

- "Business Court Lawsuit" means the removal of the Current Lawsuit or the filing of a new lawsuit by Lone Star in the Eleventh Division of the Texas Business Court asserting the claims and causes of action currently asserted in the Current Lawsuit.

- The "Effective Date" of this Agreement is the date this Agreement is signed by all Parties.

- "Tolling Provisions" refers to the provisions set forth in Section III of this Rule 11 Agreement.

- "Business Court Remand or Dissolution Tolling Provision" refers to the provisions set forth in Section IX of this Rule 11 Agreement.

- "ISquared" means ISQ Global Infrastructure Fund II L.P. c/o I Squared Capital Advisors (US) LLC.

## II.     Agreement to Jurisdiction of the Texas Business Court.

The Parties agree that the Current Lawsuit, including all claims and causes of action asserted as of the Effective Date of this Agreement, is within the jurisdiction of the Texas Business Court, as established by Chapter 25A of the Texas Government Code. The Parties also agree that they are subject to personal jurisdiction in the Texas Business Court.

The Parties acknowledge that this Agreement is meant to satisfy the requirements of Section 25A.004 of the Texas Government Code as a "subsequent agreement that the business court has jurisdiction over the action."

The Parties waive any challenge to the jurisdiction of the Texas Business Court to hear and adjudicate the claims and causes of action asserted in the Current Lawsuit that are to be asserted in the Business Court Lawsuit.

The Parties intend that this Agreement—executed after September 1, 2024—is to allow the Current Lawsuit to become removable to the Texas Business Court.

In the event it is determined that the Texas Business Court does not have the authority to hear the Current Lawsuit, the Parties also intend this provision to allow the Current Lawsuit to be non-suited without prejudice and refiled in the Business Court as the Business Court Lawsuit.

## III.    Tolling.

The Parties expressly agree any and all applicable relation back doctrines shall apply as if the Business Court Lawsuit had first been filed on May 20, 2021, to the same extent as in the Current Lawsuit.

The Parties acknowledge and agree that this Tolling Provision is intended to preserve the status quo, as of the Effective Date, of the claims and defenses available to the Parties, including claims and defenses timely asserted.  Nothing in this Tolling Provision is intended to enlarge or shrink the claims and defenses available to the Parties as of the Effective Date or to prevent any Party from amending their current pleadings to add claims or defenses.

Without limitation of the foregoing, the Parties further acknowledge and agree that this Tolling Provision does not toll, affect, extend, or revive any statutes of limitations that expired prior to the Effective Date.

Within five (5) business days of the Effective Date, the Parties agrees to jointly file a Notice of Removal of the Current Lawsuit to the Eleventh Division of the Business Court.

In the event it is determined that the Business Court does not have the authority to hear the Current Lawsuit, Lone Star shall execute and file, within five (5) business days of a full and final determination that the Texas Business Court lacks authority to hear the Current Lawsuit, a notice of nonsuit dismissing all claims and causes of action against Defendants, without prejudice in the Business Court Lawsuit.  Lone Star will then promptly file a new petition in the Business Court, asserting the claims and causes of action currently asserted in the Current Lawsuit.  The statute of limitations for all claims and defenses asserted in the Current Lawsuit will be tolled up to forty-five (45) days during the intervening period between the potential nonsuit and refiling contemplated herein.  Performance of this Agreement, including the contemplated nonsuit or dismissal of the Current Lawsuit shall not give rise to any argument in the Business Court Lawsuit that the claims, defenses, or causes of action currently asserted or that could currently be asserted in the Current Lawsuit is or are untimely in the Business Court Lawsuit unless those claims, defenses, or causes of action would have been barred by any potential statute of limitations if the Current Lawsuit was not removed and/or non-suited and re-filed in the Texas Business Court.

Nothing contained in this Agreement shall be construed as an admission by any Party hereto of any liability or of the availability or merits of any claim, cause of action, or defense, asserted or unasserted, of any Party.

This Tolling Provision is predicated and founded upon mutual promises, the effect of which is to provide legal and sufficient consideration to support this Tolling Provision.

## IV.    Statute of Limitations Challenges Waived.

Defendants agree that the removal of the Current Lawsuit or the filing of a new lawsuit by Lone Star in the Eleventh Division of the Texas Business Court asserting the claims and causes of action currently asserted in the Current Lawsuit will not be used by Defendants to raise challenges or objections on the basis of a statute of limitations to any claims or causes of action that Lone Star asserts in the Business Court Lawsuit if the challenge or objection on the basis of a statute of limitations could not have been successfully asserted if the Current Lawsuit was not removed and/or non-suited and re-filed in the Texas Business Court.  For avoidance of doubt, Defendants do not waive any statute of limitations defense that could have been asserted in the Current Lawsuit as of the Effective Date.

## V.    Deemed Date of Filing of the Business Court Lawsuit.

The Parties agree that for any and all purposes including statute of limitations, other than determining jurisdiction of the Business Court, in the event Lone Star files the Business Court Lawsuit, the claims and causes of action asserted in the Business Court Lawsuit that were brought

in the Current Lawsuit shall be deemed by the Parties to have been filed on the date they were brought by Lone Star in the Current Lawsuit.

## VI.     Preservation of Status Quo.

The Parties agree that the status quo of litigation in the Current Lawsuit is to be preserved in the Business Court Lawsuit through this Agreement.

The Parties therefore agree to not refile or seek reconsideration of any motions(s) disposed of in the Current Lawsuit as of the Effective Date, except to the extent they could have done so in the 61st Judicial District.  The Parties acknowledge they intend for the Business Court to give the same level of deference to all orders issued in the Current Lawsuit that would have been given by the 61st Judicial District Court.

The Parties agree to abide by the August 30, 2024 order in the Current Lawsuit compelling the depositions of Todd Carpenter, Jamie Welch, Anne Psencik, Jason Nguyen, Ross Hutton, Blake Bixler, Kris Kindrick, Trevor Howard, and a Corporate Representative of EagleClaw Midstream Ventures, LLC subject to the Parties' agreement that the dates for the depositions of all deponents outlined in that order except for Anne Psencik and Todd Carpenter shall be extended to October 31, 2024.  The Parties also agree to abide by the September 13, 2023 order in the Current Lawsuit compelling the deposition of Andrew Ray to occur within seven days of the deposition of Todd Carpenter.  Notwithstanding the preceding, the Parties specifically reserve the right to seek appellate review and/or mandamus relief related to any orders entered by the 61st Judicial District Court and specifically agree the Fifteenth Court of Appeals will have appellate and mandamus jurisdiction during the Business Court Lawsuit related to orders entered by the 61st Judicial District Court.  In the event Lone Star ultimately files the Business Court Lawsuit pursuant to this agreement, the Parties will work together in good faith to take all necessary steps to preserve the status quo of the litigation, including preserving the Parties' ability to seek appellate and/or mandamus review of any orders issued in the Current Lawsuit.

Notwithstanding the preceding paragraphs, nothing in this Rule 11 Agreement shall be construed as a waiver of the right of any Party to file motions seeking relief not previously requested in the Current Lawsuit, even if such motions relate to, or incorporate, arguments previously raised in the Current Lawsuit.  For the avoidance of doubt, the Parties do not intend to waive any potential requests for summary judgment or any appellate rights.

## VII.    Trial Date and Docket Control Order.

The Parties agree to jointly file a request for a docket control order in the Business Court Lawsuit with the following deadlines: [1]

- Pleadings Deadline – November 16, 2024

---

[1] The Parties agree through this agreement to suspend all current pleading-, discovery-, and expert-related deadlines in the Current Lawsuit until the Business Court Lawsuit enters a docket control order.

- Affirmative Expert Designation Deadline – January 17, 2025

- Defensive Expert Designation Deadline – February 17, 2025

- Rebuttal Expert Designation Deadline – February 24, 2025

- Close of Discovery: March 3, 2025

- Motion Filing Deadline (Experts and Dispositive) – March 3, 2025

- Document Supplementation:

  o October 7, 2024 – Refresh volume, damages and invoice data through August 31, 2024

  o December 9, 2024 – Refresh volume, damages and invoice data through October 31, 2024

  o February 14, 2025 – Refresh volume, damages and invoice data through December 31, 2024

- Trial Date – April 21, 2025

If the Texas Business Court orders a trial setting on a different date or a docket control order that differs from the one jointly requested by the Parties, the Parties agree to abide by the docket control order entered by the Texas Business Court.  The Parties also agree to work together cooperatively and in good faith to develop a workable schedule around the docket control order entered by the Texas Business Court.

## VIII.   **Discovery and Document Production.**

All documents produced by the Parties in the Current Lawsuit shall be deemed to have been produced in the Business Court Lawsuit.  All depositions taken in the Current Lawsuit shall be deemed to have been taken in the Business Court Lawsuit.

The Parties agree to abide by the terms of the July 1, 2022 Joint Stipulated Confidentiality Order entered in the Current Lawsuit for a period of forty-five (45) days after nonsuit and to jointly seek entry of an identical Confidentiality Order in the Business Court Lawsuit within forty-five (45) days of removal.

The Parties agree to work together cooperatively and in good faith to secure agreement from non-parties who have produced documents in the Current Lawsuit to deem those productions as having been re-produced in the Business Court Lawsuit.

The Parties will not oppose the re-production, or deemed production, of non-party materials in the Current Lawsuit into the Business Court Lawsuit.

Productions by non-parties are deemed to have occurred in the Business Court Lawsuit on the date they occurred in the Current Lawsuit.

To the extent motion practice is required to secure re-production of non-party materials which were produced as of the Effective Date of this Agreement, the Parties agree that said motions will be unopposed, regardless of the venue where such motions are filed.

The Parties agree to work together cooperatively and in good faith to secure agreement with ISquared that the May 9, 2024 Agreement between Lone Star and ISquared, which relates to the production of documents and deposition testimony in the Current Lawsuit, remains in effect for the production of documents and deposition testimony in the Business Court Lawsuit.

## IX.     Business Court Remand or Dissolution Tolling.

In the event the Business Court determines that it lacks jurisdiction to hear and adjudicate the claims and causes of action asserted in the Business Court Lawsuit, or in the event the Business Court remands the case to the Judicial District Courts of the State of Texas, or in the event it is determined the Business Court must be dissolved or suspended, this Business Court Remand or Dissolution Tolling Provision immediately goes into effect.

In the event the Business Court Remand or Dissolution Tolling Provision is triggered, the following shall occur:

For a 45-day period beginning on the date the Business Court Remand or Dissolution Tolling Provision is triggered, the Parties agree that all applicable state and federal statutes of limitations that might apply to any claims or causes of action Lone Star has asserted against Defendants in the Business Court Lawsuit shall be suspended and tolled.  Performance of this Agreement, including the contemplated nonsuit or dismissal of the Current Lawsuit, the dismissal or remand of the Business Court Lawsuit, or the dissolution or suspension of the Business Court shall not give rise to any argument in the subsequently-filed lawsuit that the claims, defenses, or causes of action currently asserted or that could currently be asserted in the Current Lawsuit are untimely in the subsequently-filed lawsuit, unless those claims, defenses, or causes of action would have been barred by any potential statute of limitations if the Current Lawsuit was not removed and/or non-suited and re-filed in the Texas Business Court.

Without limitation of the foregoing, the Parties further acknowledge and agree that this provision does not toll, affect, extend, or revive any statutes of limitations that expired prior to the Effective Date.

Nothing contained in this Business Court Remand or Dissolution Tolling Provision shall be construed as an admission by any party hereto of any liability or of the availability or merits of any claim, cause of action, or defense, asserted or unasserted, of any Party.

This Business Court Remand or Dissolution Tolling Provision is predicated and founded upon mutual promises, the effect of which is to provide legal and sufficient consideration to support this Business Court Remand or Dissolution Tolling Provision.

## X.  Filing of This Rule 11 Agreement.

The Parties authorize the filing of this Rule 11 Agreement in both the Current Lawsuit and in the Business Court Lawsuit.  This Rule 11 Agreement is enforceable against the Parties in either proceeding.

## XI.  Intent of Agreement.

"Primary Intent":  The Parties intend this Agreement to be interpreted to afford the broadest possible reservation of the Parties' rights to assert any claims, causes of action, and/or defenses in the Business Court that were or could have been asserted in the Current Lawsuit as of the Effective Date.

"Secondary Intent":  The Parties also intend for this Agreement to be interpreted consistent with ensuring the Business Court has jurisdiction over the Current Lawsuit.

To the extent any provisions of this Agreement are determined to be ambiguous, inconsistent, or in conflict, the Parties intend the Agreement to be harmonized and interpreted consistently with both the Primary Intent and Secondary Intent.  To the extent any provision of this Agreement cannot be interpreted with both the Primary Intent and Secondary Intent, the Parties intend for the Primary Intent to govern and for this Agreement to be interpreted to ensure that any claims, causes of action, and/or defenses that could have been asserted in the Current Lawsuit as of the Effective Date are preserved as if the Current Lawsuit had never been removed and/or re-filed in the Business Court in the first place.

Garrett S. Brawley
*Counsel for Defendants*

Date: September 12, 2024

Andrew Price
*Counsel for Plaintiff*

Date: 9/13/24

0046

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jesse Crochet on behalf of Fields Alexander
Bar No. 783528
jcrochet@beckredden.com
Envelope ID: 98263092
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Brief of Defendants-Joint Petitioners
Status as of 3/10/2025 3:50 PM CST

Associated Case Party: Lone Star NGL Product Services, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Rafe Schaefer | 24077700 | rafe.schaefer@nortonrosefulbright.com | 3/10/2025 3:31:33 PM | SENT |
| Abraham Chang | 24102827 | abraham.chang@nortonrosefulbright.com | 3/10/2025 3:31:33 PM | SENT |
| William Boyce | 2760100 | bboyce@adjtlaw.com | 3/10/2025 3:31:33 PM | SENT |
| Timothy Shinn | 24125409 | Timothy.shinn@nortonrosefulbright.com | 3/10/2025 3:31:33 PM | SENT |
| Andrew Price | | andrew.price@nortonrosefulbright.com | 3/10/2025 3:31:33 PM | SENT |

Associated Case Party: EagleClaw Midstream Ventures LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Fields Alexander | | falexander@beckredden.com | 3/10/2025 3:31:33 PM | SENT |
| Parth S.Gejji | | pgejji@beckredden.com | 3/10/2025 3:31:33 PM | SENT |
| Mary Raffetto | | mkraffetto@beckredden.com | 3/10/2025 3:31:33 PM | SENT |
| Garrett S.Brawley | | gbrawley@beckredden.com | 3/10/2025 3:31:33 PM | SENT |
| Cassie Maneen | | cmaneen@beckredden.com | 3/10/2025 3:31:33 PM | SENT |
| Thomas Ganucheau | | tganucheau@beckredden.com | 3/10/2025 3:31:33 PM | SENT |